Downey, Judge,
reviewing the facts found to be estab- . lished, delivered the opinion of the court:
The plaintiff seeks to recover under a provision of the act of May 27, 1902, 32 Stat., 207-244, the additional sum of $185,600.36 on account of the construction of the ironclad monitor Suncooh during the Civil War. It was paid the contract price of $395,000 and additional compensation to the amount of $198,674.30 on account of changes and alterations, an aggregate sum of $593,674.30.
The case as presented involves 'a rather unusual situation giving rise to a question the determination of which, as seems to us to be required, will render it unnecessary to consider others.
The petition declares in general terms upon a stated aggregate “ additional cost ” of building this vessel “ by reason of *533 the changes and alterations in the plans and specifications required and by reason of the delays in the prosecution of the work occasioned by the Government of the United States.” We have no bill of particulars and no attempt at an itemized statement. This is charged to the fact that in 1881 the books of the company were destroyed by fire.
The primary question which presents itself is one of evidence, that is, the competency as evidence of the matter relied on as such. It should not be necessary to say, and but for that which is sometimes asked of us we would not say, that a plaintiff seeking relief at the hands of this court must assume the same burden of proof as in any other court of original jurisdiction, and if he successfully assumes that burden it must be by competent evidence. This court has no jurisdiction to bestow bounty, and has neither the right nor the disposition, in the absence of proof, to assume that a thing is true because an interested party asserts it. Eights must be determined from competent evidence, and if the party upon whom the burden rests fails in this respect he must fail in his remedy.
Dealing still in generalities, we are asked by the plaintiff in its request for findings to find that the additional cost necessarily incurred in the building and completion of the Suncook by reason of changes and alterations in the plans and specifications and by reason of the delays occasioned by the Government of the United States was $384,214.66, and in support thereof we are referred to a claim made by Donald McKay, another contractor, for alterations and additions made by him on the Nauset in the sum of $231,068.20, and this is the basis of the computation by means of which plaintiff’s attorney arrives at the correct amount of its claim in this case. The amount of the alterations and additions as to which compensation was agreed upon in advance in McKay’s case is deducted from his total claims to alterations and additions, and we have the basis of plaintiff’s calculation of its claim, which was the amount claimed by McKay for alterations and additions on the Nauset, compensation for which was not agreed upon in advance. To'this is added the alterations and additions on the Sv/ncook for which compensation was agreed upon in advance as shown in the *534 findings, and to this amount is then added “ labor, $51,619.20,” and “ material, $29,894.62,” both of which items are taken in exact figures from McKay’s claim as to the Nauset. Plaintiff’s attorney informs us that, for reasons stated, no doubt satisfactory to him, no injustice is done the United States by adopting these figures and indeed he asserts that the true facts would sustain a claim in a larger amount.
To these figures are added $12,000 for “ disorganization ” which is taken from the testimony as to the cost to the Atlantic Works, another contractor, of building the Gaseo, and $73,058.50 for “ running expenses ” which is computed on a percentage basis arrived at by the same witness in detailing the experiences of the Atlantic Works in building the Gaseo. From the aggregate of these amounts some deductions of concededly improper amounts are made and the result is the plaintiff’s claim. And this may, in fact, be said to be the method of proof although there is meager attempt to bolster it up in some respects. It does appear that the Suneooh and the Nauset were of the same type of vessel, similar or possibly alike in many respects, and that they were built at nearly the same time, and John Souther, president of the Globe Works, in his testimony taken in 1903, when he was 87 years old, in answer to a leading question, says that he had looked over a statement by McKay as to the Nauset and believed it to be a fair statement of the prices he (Souther) paid for labor and material on the Suneooh. There are possibly other bits of evidence, some of them mere opinions, which it is claimed support the use of the McKay figures, but the McKay account in the case of the Nauset is so fundamentally and confessedly the basis of the claim in this case and so relied upon that without its acceptance as competent evidence in proof of the claim in this case there may be said to be no proof.
It is noticeable that plaintiff’s counsel makes no successful effort, in the face of the contention by the defendant, to show us by any accepted rules of evidence, that matter such as this is competent for the purpose offered. The impression created is rather that the court is asked, irrespective of rules of evidence, to assume that an account prepared by *535 one contractor as to his particular contract should on some broad principle, possibly of mutual antiquity, be good enough to establish claims upon the same basis for all other contractors in any considerable degree similarly situated. The citation from Cramp v. United States, 50 C. Cls. 179, is a general statement from the syllabus. Even in that statement it is to be observed that “ the best proof of which the case is susceptible ” must be “ sufficiently certain to warrant a judgment.” An examination of the opinion discloses no holding in support of plaintiff’s contention but much to the contrary.
Some attempt is made in counsel’s brief to point out the similarity of the contracts and of the circumstances under which they were performed, and there was some such similarity, but there were known points of vital difference and there were many material respects in which it is not shown and as to which it can not be presumed that the conditions were the same. The evidence is comparative only, and if, upon a showing of facts justifying conclusions therefrom, it might be admissible for some purposes, it seems to us conclusive that such matter can not, under the circumstances of this case, be regarded as competent or of any probative value at all.
The Supreme Court has said that the rules of evidence deduced from the common law should govern in this court (Moore v. United States, 91 U. S. 270), and this coart has so held. Countryman v. United States, 21 C. Cls. 474; Allen v. United States, 28 C. Cls. 141. We know of no common-law rule of evidence under which, in the circumstances of this case, the McKay account as to the Nauset could be admitted as proof of plaintiff’s claim on account of the Simoooh. It is scarcely necessary to discuss the basis of recovery prescribed by the act of May 27, 1902, to show that there is a total lack of competent evidence to sustain any claim, and our conclusion on this question renders it unnecessary to consider the conclusion properly to be reached if the matter in question were to be regarded as competent. We may add the observation, however, that plaintiff’s claim is predicated on the theory that the entire delay in the com *536 pletion of tlie /Suncoole was chargeable to the United States. We have not so found.
There is another important question presented in this case as the basis of a request by the defendant that the court adjudge a forfeiture of the claim under section 172 of the Judicial Code. We have found facts with reference thereto, but the conclusion already reached, adverse to the plaintiff, seems to render it unnecessary at this time to determine this question.
The petition should be dismissed with judgment against the plaintiff for the cost of printing, and it is so ordered.
Hay, Judge, Barkey, Judge, Booth, Judge, and Campbell, Chief Justice, concur.