BILL R. AND JOYCE L. JARRETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jarrett v. Commissioner
Docket No. 16189-89
United States Tax Court
T.C. Memo 1992-181; 1992 Tax Ct. Memo LEXIS 218; 63 T.C.M. (CCH) 2568; March 26, 1992, Filed *218 Decision will be entered for respondent. Christopher D. Rhodes, for petitioners. Richard L. Hunn, for respondent. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was considered pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined a deficiency of $ 3,819 in petitioners' Federal income tax for 1985 and additions to tax under section 6653(a)(1) and (2), respectively, of $ 190.95 and 50 percent of the interest due on the deficiency. Respondent has conceded the additions to tax. The principal issue for decision is whether respondent was correct in refusing to accept an amended income tax return by petitioners for their 1985 tax year. A threshold question, raised by petitioners, is whether this Court has jurisdiction to consider this case in view of a pending adversary proceeding petitioners *219 instituted against respondent in bankruptcy court. This case was submitted fully stipulated. Petitioners' legal residence was Huntsville, Texas, at the time they filed their petition. All of the other stipulated facts are incorporated herein by reference. With respect to the jurisdictional issue, shortly after this case was submitted, petitioners filed a petition under chapter 7 of the Bankruptcy Code in United States Bankruptcy Court for the Southern District of Texas, Houston Division. All proceedings in this case, accordingly, were stayed pursuant to 11 U.S.C. section 362(a)(8) (1988). Thereafter, petitioners were granted a discharge in bankruptcy, at which time the stay was lifted. The parties then filed briefs with this Court as ordered. Several weeks after their discharge in bankruptcy, petitioners filed an adversary proceeding against respondent in the same bankruptcy court. The pleadings in that case have not been incorporated in any stipulation or other document filed with this Court; however, in status reports filed by the parties in this case, it appears that petitioners seek to determine whether certain of their tax liabilities, including their 1977 income taxes, *220 have been discharged. As part of their adversary proceeding, petitioners filed a motion in bankruptcy court to extend the stay of this case under 11 U.S.C. section 362(a)(8) (1988). A hearing was held on that motion, and the motion was denied. All proceedings in this case were stayed during the time petitioners were in bankruptcy. 11 U.S.C. sec. 362(a)(8) (1988). That stay remained in effect until the earliest of the closing of the case, dismissal of the case, or the granting or denial of a discharge. 11 U.S.C. sec. 362(c)(2) (1988); Smith v. Commissioner, 96 T.C. 10, 14 (1991). Petitioners were granted a discharge in bankruptcy and an order was issued by this Court lifting the stay. The subsequently filed adversary proceeding, without any stay orders from the bankruptcy court, does not preclude this Court from considering this case. Petitioners' contention, therefore, that this Court lacks jurisdiction is without merit. We next consider the merits of this case. Petitioner Bill R. Jarrett (Mr. Jarrett) was employed by Gulf States Toyota, Inc., from 1970 until sometime during 1985, when his employment terminated. During 1985, Mr. Jarrett earned a salary *221 of $ 16,238.08 from this employer. Federal income taxes of $ 4,822.08 were withheld from his wages pursuant to section 31. When Mr. Jarrett's employment with Gulf States Toyota, Inc., terminated during 1985, Mr. Jarrett received a distribution at that time of $ 52,534.53 from a qualified retirement plan maintained by his employer. The distribution was reported to the Internal Revenue Service, and a Form 1099-R, Total Distribution from Profit-Sharing Retirement Plans, Individual Retirement Arrangements, Etc., was issued to petitioners as a 1985 distribution. Petitioners timely filed their 1985 Federal income tax return, which was prepared by a certified public accounting firm. The return included all of petitioners' income except the retirement plan distribution of $ 52,534.53. The return, as filed, showed no taxes for 1985, an investment credit of $ 1,202, and an overpayment of $ 4,822 as a result of the taxes withheld by Mr. Jarrett's employer. The investment credit of $ 1,202 was not utilized, since the return showed no taxes for 1985. Petitioners requested a refund on their return. Respondent applied the $ 4,822 overpayment to an outstanding income tax liability owing *222 by petitioners for their 1977 tax year. For reasons not explained in the record, petitioners' income tax return for 1977 was filed on February 24, 1984. As a result of respondent's application of the $ 4,822, the unpaid balance of petitioners' reported 1977 tax liability of $ 23,003 was paid in full. The 1985 investment credit of $ 1,202 was carried forward and fully utilized on petitioners' 1986 income tax return, which was also timely filed. Sometime after the 1986 return was filed, and well within the 3-year period for assessment and collection of taxes under section 6501(a) for 1985, petitioners received an inquiry from respondent's compliance center at Austin, Texas, relative to the 1985 retirement plan distribution of $ 52,534.53, which was not reported on petitioners' 1985 return. The parties have stipulated that the failure to report this item was inadvertent and, presumably because of such inadvertence, respondent conceded the additions to tax. Petitioners, through their accounting firm, promptly prepared amended income tax returns, Forms 1040X, for 1985 and 1986 for the following purposes: (1) To include the $ 52,534.53 retirement plan distribution as 1985 income; (2) *223 to determine their 1985 income tax as a result of this additional income, which they elected to be taxed under the 10-year averaging method applicable to such distributions; (3) to apply as a credit to their 1985 taxes the $ 1,202 investment credit, which was originally reported on their original return but which had not been utilized; (4) to apply as a payment to their 1985 taxes the $ 4,822 taxes withheld by Mr. Jarrett's employer on Mr. Jarrett's salary during 1985; (5) to delete from their 1986 return the $ 1,202 investment credit for 1985, which petitioners had carried forward to 1986; and (6) to claim an overpayment and refund of $ 1,003 for 1985. As a result of the 1985 amended return, petitioners' 1985 income tax was $ 5,021. Petitioners claimed their 1985 investment credit of $ 1,202, which reduced the tax to $ 3,819. Petitioners then claimed payment of the $ 3,819 by application of the $ 4,822 taxes, which had been withheld on Mr. Jarrett's 1985 wages by his employer. This resulted in an overpayment of $ 1,003 and a claim for refund. As a result of the 1986 amended return, petitioners' 1986 tax remained the same but, because the $ 1,202 investment credit was deleted *224 and utilized on their 1985 return, petitioners had a balance due of $ 1,202 for 1986. In a letter accompanying their amended returns, petitioners requested payment of the $ 1,202 by application of the $ 1,003 overpayment for 1985 and the remainder by application of an overpayment for 1984 based on an amended return for 1984 which petitioners filed concurrently. Respondent accepted petitioners' amended return for 1986 but refused to accept the amended return for 1985. Several weeks later, respondent issued a notice of deficiency, in which respondent determined a deficiency of $ 3,819 in taxes for 1985 and the additions to tax for negligence, which additions have now been conceded by respondent. In the notice of deficiency, respondent made no changes to petitioners' income, deductions, their election of 10-year averaging for their qualified retirement plan distribution, their utilization of the $ 1,202 investment credit toward payment of 1985 taxes, and petitioners' computation of $ 5,021 as their tax liability for 1985, all as reflected in the amended income tax return for 1985. The only difference between petitioners' amended return for 1985 and the determination in the notice *225 of deficiency is the denial by respondent in the notice of deficiency of petitioners' claim to application of the $ 4,822 taxes withheld by Mr. Jarrett's employer toward payment of petitioners' 1985 taxes. Respondent contends the $ 4,822 was applied as of April 15, 1986, to an outstanding income tax liability of petitioners for 1977; that application of the $ 4,822 was based upon the 1985 original timely filed return pursuant to section 6402(a); [2] and that respondent is under no obligation to accept a subsequently filed amended return which would change respondent's exercise of discretion under section 6402(a). Respondent further contends that there is no statutory authority for the filing of amended income tax returns, and that the acceptance of amended returns rests solely within the discretion of the Commissioner, citing Miskovsky v. United States, 414 F.2d 954, 955 (3d Cir. 1969). Respondent, accordingly, exercised the discretion not to accept petitioners' amended 1985 tax return. The refusal to accept the amended return is based entirely on the claim by petitioners that the $ 4,822 withheld from their 1985 wages should be applied to payment of their 1985 *226 tax liability. It is generally recognized that the excess of estimated tax payments made by a taxpayer and the excess of taxes withheld from a taxpayer's wages for or during the course of a taxable year, either or both of which exceed the tax liability shown on the taxpayer's return may be repaid to the taxpayer after the return for the tax year is filed. Sec. 301.6402-3(a), Proced. & Admin. Regs. Such action, however, is not final and is subject to a determination of the taxpayer's correct tax for that year. Any refund to the taxpayer is subject to final audit and adjustment of the taxpayer's return for the year involved. *227 Respondent is not prevented from later determining a deficiency in tax for such year because of the prior refund. Terry v. Commissioner, 91 T.C. 85, 87 (1988). Thus, if respondent, instead of crediting petitioners' 1977 tax liability, had refunded the $ 4,822 directly to them, petitioners would clearly owe and would be obligated to pay to respondent whatever amount of additional tax which was thereafter determined they owed for 1985. This obligation would exist regardless of what use petitioners might have made of the refund proceeds. Whether petitioners used the refund proceeds for personal or business purposes, or payment of creditors, such use is irrelevant to petitioners' obligation to pay whatever tax liability is determined for the year in which they previously received a refund. Carrying this scenario further, if petitioners had used the $ 4,822 refund to pay their 1977 tax liability, petitioners could hardly claim exoneration from liability for the later determined tax liability for 1985. Similarly, had respondent refunded the $ 4,822 to petitioners, then levied on the proceeds to satisfy the 1977 tax liability, petitioners likewise would have no *228 basis to deny liability for the subsequently determined tax owing by them for 1985. This rationale does not change simply because respondent in this case did not refund the overpayment to petitioners. At the time the 1985 return was filed, petitioners had an outstanding 1977 tax liability. Respondent, therefore, was a creditor of petitioners. The overpayment shown on petitioners' 1985 return was credited on the date the return was filed toward payment of petitioners' 1977 tax liability. Petitioners received a benefit from this credit because it reduced (paid) a liability they owed. Instead of levying petitioners' assets, respondent set off the 1977 tax liability by the amount of the overpayment shown on petitioners' 1985 return. Setoff is defined as the application of funds already in the Government's possession against a taxpayer's outstanding tax liability. The Supreme Court has held that "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947) (quoting Gratiot v. United States, 15 Pet. 336, 376 (1841), *229 and McKnight v. United States, 98 U.S. 179, 186 (1878)). Petitioners, therefore, received credit for the 1985 overpayment shown on their 1985 return, and the manner or means by which this credit was applied does not exonerate petitioners from liability for additional tax later determined for 1985. Respondent was under no greater obligation to reverse the 1977 credit than any other creditor would have been had petitioners received the refund and used the proceeds thereof to pay other creditors. Petitioners argued that, even though section 6402(a) authorizes respondent to credit an "overpayment" against any outstanding tax liability of the taxpayer, the $ 4,822 shown on petitioners' 1985 return was not an "overpayment" because section 6401(a) defines "overpayment" as any amount assessed or collected as taxes after the period of limitations properly applicable thereto. Since the $ 4,822 was not assessed or collected after the applicable period of limitations for 1985, the $ 4,822 overpayment shown on petitioners' 1985 return was not an overpayment. Petitioners clearly have misread section 6401(a). The definition of "overpayment" is not so limited. While "overpayment" *230 includes amounts collected or assessed after the applicable period of limitations, it also includes taxes withheld on wages under section 31. Sec. 301.6401-1, Proced. & Admin. Regs. For the foregoing reasons, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 6402(a) provides: In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person.↩